UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID MOON,

Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, FRELING, BARDEN, CODY TURNWALD, PAM SAUNDERS, ZAMORA, MDOC BUREAU OF HEALTH CARE SERVICES, JOHN CHRISTIANSEN, DESCOE, WENTZEL, HALL, SOBECK, and LEOS,

Case No. 25-cv-14026
Honorable Linda V. Parker

Defendants.

______________________________________/

**OPINION AND ORDER**

In December 2025, Plaintiff David Moon ("Moon"), a "gender dysphoric intersex woman" prisoner (she/her), proceeding pro se, filed this action against the Michigan Department of Corrections ("MDOC"), the MDOC Bureau of Health Care Services, and various other prison staff (collectively, "Defendants"). (ECF No. 1.) In January 2026, the Court referred the case to Magistrate Judge Patricia T. Morris for all pretrial proceedings, including a hearing and determination of all non-dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and

recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 9.)

In February 2026, Moon filed the Amended Complaint, primarily alleging various constitutional violations under 42 U.S.C. § 1983 as well as certain other claims identified below. (ECF No. 15.) Against all Defendants, Moon brings First Amendment retaliation claims ("Count One"). Second, she alleges failure to protect claims against Defendants John Christiansen ("Christiansen"), Cody Turnwald ("Turnwald"), Descoe, Hall, Wentzel, Leos, and Freling ("Count Two"). Third, she alleges that the MDOC, Barden, Pam Saunders ("Saunders"), Zamora (the former John Doe), and the MDOC Bureau of Healthcare Services were deliberately indifferent to her medical needs ("Count Three"). Fourth, she alleges Equal Protection violations against Sobeck, Christiansen, Descoe, Hall, Wentzel, Freling, and Turnwald ("Count Four"). Finally, against all Defendants, Moon also alleges violations of Title II of the Americans with Disability Act ("Count Five") and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") ("Count Six") (collectively, "Counts"). As to all Defendants except for the MDOC and MDOC Bureau of Health Care Services, Moon brings the foregoing claims in their official and individual capacities. (ECF No. 15 at PageID.74.)[1] Moon seeks an injunction

[1]A proper defendant for Title II ADA claims can only be "the public entity or an official acting in his or her official capacity." *Moon v. Leon*, No. 1:24-cv-1067,

requiring the MDOC "to update its policies and to train and supervise its agents pertaining to issues regarding vulnerable inmates (housing, placement, and classification)." (*Id*. at PageID.85.) Moon also seeks compensatory and punitive damages totaling over 8 million dollars. (*Id*.)

In March 2026, MDOC, on behalf of itself and the remaining Defendants,[2] filed a motion for summary judgment on all Counts.[3] (ECF No. 22.) As to the claims brought against MDOC, which includes the MDOC Bureau of Health Care

---

2024 WL 4762999, at *7 (W.D. Mich. Nov. 13, 2024) (citing *Carten v. Kent State Univ*., 282 F.3d 391, 396–97 (6th Cir. 2002) and *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005)). As such, insofar as Moon's claims under Title II are brought against the non-entity defendants in their individual capacities, the Court is constrained to dismiss these claims. *Lloyd v. City of Streetsboro*, No. 18-3485, 2018 WL 11298664, at *6 (6th Cir. Dec. 20, 2018) ("The district court correctly concluded Lloyd's ADA claims to be without merit. First, to the extent that Lloyd's Title II claim was brought against the individual defendants in their personal capacities, it was properly dismissed because there is no individual liability under the ADA." (citing *Carten*, 282 F.3d at 396-97)); *Noble v. Sapp*, No. 98-6124, 1999 WL 1045090, at *2 (6th Cir. Nov. 10, 1999) (noting that courts can sua sponte dismiss claims when the allegations "are totally . . . devoid of merit[] or no longer open to discussion" (quoting *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999)).

[2]Initially, when MDOC first moved for summary judgment, it was only the MDOC that had been served; since then, all remaining Defendants, except ostensibly for Leos and Barden, have been served.

[3]Defendants stylize the motion as a motion to dismiss and as a motion for summary judgment. (ECF No. 22.) The local rules forbid filing stand-alone documents together. *See* L.R. 7.1(i) (noting that, for instance, a complaint cannot be filed with a motion for a preliminary injunction). Nonetheless, since it was stylized as both, Moon had the requisite notice and is not otherwise prejudiced by the Court's handling of the motion as one for summary judgment—that is, to the extent the Court grants the Defendants' motion, it does so regarding disputes that turn on legal questions, not factual ones.

Service, MDOC asserted sovereign immunity under the Eleventh Amendment. (*Id.* at PageID.114-17.) As to certain claims, Defendants asserted that Moon failed to meet the pleading standards of Federal Rule of Civil Procedure 8. (*Id.* at PageID.117-22). As to all Counts, MDOC asserted that Moon failed to exhaust the administrative remedies prior to filing suit. (*Id.* at PageID.122-29.) Moon opposed the motion. (ECF No. 25.)

On May 13, 2026, Magistrate Judge Morris issued a Report and Recommendation (the "R&R") recommending that this Court grant the motion for summary judgment for failure to exhaust and dismiss the case in its entirety without prejudice. (ECF No. 37.) At that time, the parties were informed that they must file any objections to the R&R within 14 days. (*Id.*) Moon did not file her objections within that time. In that regard, she moved to extend the deadline to file her objections. (ECF No. 40.) Appreciating the circumstances surrounding Moon's transfer, the Court will grant that motion. *See Wilson v. Bank of Am., N.A.*, No. 3:22-cv-00317, 2023 WL 11911573, at *1 (M.D. Tenn. July 13, 2023) (noting that district courts have discretion to consider late objections). Accordingly, the Court will consider Moon's objections, dated June 15, 2026, as well as MDOC's timely response to those objections. (ECF Nos. 41, 42.)

As to the motion for summary judgment, the Court finds the facts and legal arguments sufficiently presented in the parties' briefs and hereby dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I. Legal Standards

The following standards are relevant to this case.

### A. Reviewing an R&R

When objections are filed to a magistrate judge's R&R on a dispositive matter, the Court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). A general objection—or one that does nothing more than disagree with a magistrate judge's determination or summarize what has been presented before—is not considered a valid objection. *Howard v. Sec'y of Health & Hum. Servs*., 932 F.2d 505, 508-09 (6th Cir. 1991). The Court, however, "is not required to articulate all of the reasons it rejects a party's objections." *Thomas v. Halter*, 131 F. Supp. 2d 942, 944 (E.D. Mich. 2001) (citations omitted). A party's failure to file objections to certain conclusions of the R&R waives any further right to appeal on those issues. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to certain conclusions in the magistrate judge's report releases the Court from its duty to independently review those issues. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985).

**B. Summary Judgment**

Summary judgment pursuant to Rule 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, the rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**C. Michigan's Grievance Procedure**[4]

MDOC Policy Directive 03.02.130 governs the grievance process. Under this policy, prior to submitting a written grievance, the grievant must first "attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue" unless prevented by circumstances outside of the prisoner's control. *Id.* ¶ W. "If the issue is not resolved," the grievant may then file a written Step I grievance within five business days after attempting to resolve the issue. *Id.* If the grievant is dissatisfied with the response received at Step I or if he did not receive a timely response, he may then file a Step II grievance within ten business days of receiving the Step I response or within ten business days of when the response was due. *Id.* ¶ AA. A grievant may then file a Step III grievance if he is further dissatisfied with the Step II response or does not receive a timely response. *Id.* ¶ NN. The department's Step III response is final. *Id.* ¶ OO.

Typically, inmates must pursue MDOC's grievance procedure through the end of Step III prior to filing a civil lawsuit in federal court to avoid offending the Prison Litigation Reform Act. *Belser v. Alton*, No. 15-2024, 2016 WL 11848552, at *3 (6th Cir. Oct. 4, 2016).

---

[4]This is the general grievance procedure used in Michigan prisons. (ECF No. 22); *Tubbs v. Payton*, No. 25-1950, 2026 WL 2664699, at*1 (6th Cir. Sept. 10, 2026) (recounting the same).

## II. Facts[5]

On October 30, 2025, Moon was transferred to the St. Louis Correctional Facility. (ECF No. 15 at PageID.76.) That same day, Moon was placed in a 2-unit cell with a non-gender dysphoric inmate. (*Id.*) That evening, Moon approached Leos, a correctional officer, to report that this inmate propositioned Moon for inappropriate sexual favors, that Moon was uncomfortable, and that Moon did not believe she was being appropriately housed.[6] (*Id.* at PageID.77.) Leos ordered Moon to return to her cell and she complied. (*Id.*) The next morning, that same

[5]As neither the state nor the R&R summarized the facts, the Court will do so here, as it is necessary for the disposition of this motion. Because Moon filed a verified complaint, that is sufficient justification for the Court to rely on it for summary judgment purposes. (ECF No. 15); *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) and *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992)); *Williams,* 981 F.2d at 905 (noting that a "verified complaint . . . would have the same force and effect as an affidavit and would give rise to genuine issues of material fact"). In this scenario, the Court refrains from using words such as "allegedly," as the case law makes clear that a verified complaint does contain specific facts for summary judgment purposes; at the same time, because the parties do not present the agreed-upon facts, the Court does not intend to indicate that either party has given up their right to dispute these facts or to make arguments based on a version of the facts that is different from what the Court provides herein. *See Sessin v. Thistledown Racetrack, LLC*, 187 F. Supp. 3d 869, 875 n.36 (N.D. Ohio 2016) (noting that defendants "are not waiving their argument as to plaintiff's disability and are assuming only for summary judgment purposes that he can establish that [he] is disabled" under the statute).

[6]Moon claims she is recognized as a "potential victim under the Prison Rape Elimination Act and is not supposed to be housed with violent or sexually predatory inmates." (ECF No. 15 at PageID.76.) At this juncture, because Defendants do not concede as much or otherwise address it, the Court does not have sufficient information to confirm this legal conclusion.

inmate crawled into Moon's bed and sexually assaulted her. (*Id.*) Moon reported the incident to a non-party sergeant who immediately had her moved. (*Id.*)

On November 6, 2025, Freling and Turnwald—both prison counselors with authority as to the housing decisions for inmates like Moon—moved Moon into a cell with an "incredibly fit and muscular inmate" imprisoned for several rapes at gunpoint. (*Id.* at PageID.75-77.) For the next 19 days, this inmate tried to make Moon "his girlfriend" using coercive tactics, such as taking advantage of Moon's "financial desolation" and offering Moon safety through his gang affiliations. (*Id.* at PageID.78.) Moon rebuffed these advances. (*Id.*)

On or about November 25, 2025, Moon's cellmate "groped at her and they began to argue." (*Id.*) Moon threatened to report him and the inmate attacked her, shattering Moon's skull. (*Id.*) Once Moon's inmate "finally allowed" Moon to seek medical attention, Moon flagged down Sobeck, a correctional officer, and told him that she needed to go to the emergency room. (*Id.* at PageID.75, 79.) Moon went to the officers' station to report the attack; she was cuffed and taken to the segregation unit. (*Id.* at PageID.79.) Sobeck authored a false report, supposedly in retaliation, regarding Moon's conduct for "Class I: Fighting." (*Id.*) While Moon was away, Sobeck disposed of Moon's feminine hygiene products and clothing,

depriving her of the items she needs to treat her gender dysphoria[7] and replaced them with standard-issued clothing for male prisoners filled with “vomit, feces, and urine stains.” (*Id.*)

Moon was taken to the hospital, emergently treated, and diagnosed with several skull fractures, requiring an urgent follow-up with a surgeon. (*Id.*; ECF No. 25 at PageID.173 (clarifying she was, in fact, taken to the hospital initially).) Moon submitted many medical kites for follow-up care. (ECF No. 15 at PageID.79.) Around December 5, 2025, Moon spoke with Barden, one of the prison nurses, regarding a recent medical kite; Barden informed Moon that Barden did not process that medical kite into Moon’s electronic health record because Barden was “just talking directly to her about it.” (*Id.* at PageID.79-80.) Barden lied to Moon, saying that the surgery appointment had been scheduled and the facility was awaiting “approval from housing.” (*Id.* at PageID.80.)

On December 9, 2025, Moon spoke with Saunders, another nurse in prison via a healthcare kite. (*Id.* at PageID.75, 80.) Saunders also lied to Moon,

---

[7]Because Moon provides a verified complaint, the Court accepts that Moon has gender dysphoria as fact for purposes of summary judgment. *See Miller v. Stevenson*, No. 1:18-cv-702, 2018 WL 3722164, at *2 n.1 (W.D. Mich. Aug. 6, 2018) (noting that “gender identity disorder” condition has been removed from [t]he Diagnostic and Statistical Manual of Mental Disorders (DSM-V) and replaced with gender dysphoria.”) However, the Court will leave final adjudication on whether Moon suffers from that condition for trial.

informing her that her surgical consult had been scheduled.[8] (*Id*. at PageID.80.) Moon reports that, among other medical problems arising from the attack, she suffers from numbness affecting at least 40% of her face, which, she has since learned, is likely permanently disfigured because of the delay in receiving follow-up care. (*Id*.)

A non-party correctional officer reportedly filled out a request for protection/investigation, which Moon identifies as Form CSO-686, on Moon's behalf sometime after the attack that she alleges left her disfigured. (*Id*.) On December 3, 2025, Moon's scheduled appointment with the Security Classification Committee (the "SCC"),[9] chaired by the deputy wardens and administrators of housing, did not occur: the SCC members elected not to see Moon and instead, returned Moon to the same housing unit without meeting with her to discuss her safety. (*Id*. at PageID.80-81.) She was told by a non-party prison official that she

[8]Although the Court has already established that a verified complaint is sufficient generally for affidavit on summary judgment, the Court makes a point to address this specific assertion (and the earlier assertion that Barden lied) given that one might argue such an assertion amounts to an opinion. After all, perhaps it was not a lie, but a clerical error in scheduling. Even so, the Court is allowed to consider such opinions on summary judgment where they are substantiated "by specific facts." *Giles v. Univ. of Toledo*, 241 F.R.D. 466, 469 (N.D. Ohio 2007) (collecting cases). And here, such facts are present: Moon avers she was informed a surgery was scheduled and, based on her experience, it did not occur.

[9]As the Sixth Circuit has noted, this is the prison's "panel tasked with deciding whether difficult inmates should be classified to administrative segregation." *Finley v. Huss*, 102 F.4th 789, 800 (6th Cir. 2024).

would have to accept "Class I Major Misconduct to be granted safety, which she later accepted to attain safety." (*Id*. at PageID.81.) According to Moon, Defendants Christensen, Descoe, Wentzel and Hall are four members of the SCC. (*Id*.) Moon identifies Christensen as the warden of the St. Louis Correctional Facility, Descoe as the deputy warden, and Hall and Wetzel as assistant deputy wardens. (*Id*. at PageID.75.)

## III. Discussion

Moon raises four objections to the finding that all her claims should be dismissed for failure to exhaust. First, Moon argues that the R&R used the "wrong legal analysis" by failing to consider the "factual intertwinement between [Moon's] substantive legal claims and Defendants' failure to exhaust defense." (ECF No. 41 at PageID.227-30 (citing *Perttu v. Richards*, 605 U.S. 460, 467 (2025)); *see Perttu*, 605 U.S. at 479 ("[P]arties are entitled to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim protected by the Seventh Amendment."). Second, Moon argues that the Sixth Circuit does not require her to exhaust her claims flowing from the sexual assaults because Michigan's protocols in that regard are, "in practice, unavailable." (ECF No. 41 at PageID.230 (quoting *Does 8-10 v. Synder*, 945 F.3d 951, 963 (6th Cir. 2019)).) Third, she argues that, as to her retaliation claims, she could not exhaust her remedies. (*Id*. at PageID.232-33.) Finally, Moon argues that the R&R wrongly considered Moon's subjective

beliefs that the administrative process would not succeed, rather than the objective evidence demonstrating systematic failure of the grievance process. (*Id*. at PageID.233-36.) Although the parties break up the analysis into these four separate parts, the Court, tasked with liberally construing Moon's filings, views Moon's objections through the lens of her overarching concern: that the administrative grievance process was altogether unavailable to her. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting pro se filings are to be liberally construed).

The Supreme Court has held that administrative remedies will be considered unavailable where officers are unable or consistently unwilling to provide relief; where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it; or "where prison administrators thwart inmates from taking advantage of a grievance [or other administrative] process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

It is this third category for which a genuine issue of material fact exists here. According to Sixth Circuit precedent, "'a serious threat of substantial retaliation' by a prison official," if established, is sufficient to excuse the exhaustion requirement. *Gilmore v. Ormond*, No. 19-5237, 2019 WL 8222518, at *2 (6th Cir. Oct. 4, 2019) (quoting *Rinaldi v. United States,* 904 F.3d 257, 267 (3rd Cir. 2018)).

Here, the facts show that correctional officers may have led Moon, particularly by exploiting Moon's gender identity, to become so afraid, from an

objective standpoint, that she was dissuaded from utilizing the grievance process. *Stevens v. Patila*, No. 14-cv-10863, 2015 WL 1245889, at *3 (E.D. Mich. Mar. 18, 2015) (noting subjective belief of fear is insufficient to excuse one's obligation to exhaust). The most significant evidence in this regard encompasses Sobeck's actions following the November 25, 2025 assault, which, although did not occur at the hands of correctional officers, inferably took place because of Moon's gender identity. In this context, Sobeck's disposal of Moon's clothes and gender-dysphoria-related products implicitly sent a threatening message to Moon that prison officials will not only turn a blind eye but will actively participate in and further such behavior moving forward. That message was amplified to the extent that same guard took the additional step of replacing Moon's belongings with male clothes stained with vomit and feces. And, according to Moon, Sobeck was not the only one sending this message: correctional officers and prison staff, including the nurses and the panel in charge of the safety of at-risk individuals like Moon, *see supra* note 9, did so as well. As Moon explains, these individuals sent this message in various ways, including by: ordering Moon to return to the same housing unit in which she was attacked, abstaining from documenting Moon's medical injuries, and generating false misconduct claims on Moon's record.

While defendants are entitled to combat the veracity of these *specific* assertions through testimony and other evidence, the Court does not weigh

evidence on summary judgment. *See Russell v. Berkshire*, No. 1:19-cv-1014, 2020 WL 7327577, at *4 (W.D. Mich. June 18, 2020) (rejecting prisoner's claim that the grievance process was unavailable where prisoner failed "to articulate details or specifics" regarding how grievance process was unavailable); *id*. at *2 (noting that summary judgment is not for weighing credibility) (citing *Fogerty v. MGM Grp. Holdings Corp*., 379 F.3d 348, 353 (6th Cir. 2004)). And, while the R&R is correct to point out that Moon last filed a grievance almost three weeks before the events giving rise to this case, that does not mean the Court can ignore the specific circumstances giving rise to Moon's intimidation concerns that the Court has identified above. (ECF No. 37 at PageID.217); *see Gilmore*, 2019 WL 8222518, at *2 (citation omitted). Simply put, Moon's rendition of events creates a genuine issue of fact as to whether she could seriously expect false reports and harassment of such a substantial nature that the administrative process was unavailable to her.

As such, the Court accepts Moon's overarching objection. As Defendants rely generally on the argument that Moon did not file any Step III grievances whatsoever and seek to have this entire case dismissed on that basis, the Court has no reason to consider whether Moon could have nonetheless exhausted certain claims or otherwise perform such a piecemeal analysis. (ECF No. 22; ECF No. 42.) Therefore, to the extent that Defendants seek summary judgment on all claims on the basis of exhaustion, the Court denies their motion. Having so determined,

the Court declines to adopt the R&R's recommendation to dismiss this action without prejudice for failure to exhaust.

## IV. Sovereign Immunity

The Court now addresses the issue of sovereign immunity, which, under the circumstances, naturally did not receive discussion in the R&R. Unlike Defendants' argument that Moon's Amended Complaint did not accord with Federal Rule of Civil Procedure 8, the Court has no reservations addressing the sovereign immunity issue now given that the parties adequately briefed the issue prior to the R&R's issuance. (*See generally* ECF No. 22; ECF No. 37). As such, it will address the sovereign immunity issue, but not the Rule 8 issue.

As Defendants correctly noted, MDOC has complete immunity insofar as Moon's First and Eighth Amendment claims, as MDOC is an agency of a state that has not consented to suit. *Sims v. Mich. Dep't of Corrs.*, 23 F. App'x 214, 215 (6th Cir. 2001). This immunity extends to Moon's request for injunctive relief. *Lawson v. Shelvy Cnty.*, 211 F.3d 331, 335 (6th Cir. 2000) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)). Because the MDOC Bureau of Health Care Services is a division of the MDOC, it too is absolutely immune with regard to these claims. *Bailey v. Bureau of Health Care Servs.*, No. 1:17-cv-850, 2017 WL 5150786, at *2 (W.D. Mich. Nov. 7, 2017); *Coston v. Corizon, Inc.*, No. 1:17-

cv-249, 2017 WL 1206263, at *2 (W.D. Mich. Apr. 3, 2017); *Sain v. Caruso,* No. 1:11-cv-63, 2011 WL 1458403, at *3 (W.D. Mich. Apr. 15, 2011).

While Moon makes some citations to incorrect authority, Moon does not otherwise appear to dispute that sovereign immunity applies here. (ECF No. 25 at PageID.176 (indicating that she is "willing to concede dismissal of the organizational entity MDOC from Counts I [regarding First Amendment retaliation] and III [regarding deliberate indifference]"). Accordingly, the Court grants summary judgment to Defendants in that the Court dismisses, with prejudice, Counts One and Three as against the MDOC and the MDOC Bureau of Health Care Services.[10]

## V. Conclusion

Moon's motion for an extension of time to file her objections is granted. Defendants' motion for summary judgment is granted in part and denied in part. It is granted in that Counts One and Three against the MDOC and the MDOC Bureau of Health Care Services will be dismissed with prejudice. *See supra* Section IV. It is also granted to the extent that Moon brings Title II claims under the ADA against

[10]Notably, defense counsel clarifies that it does not advance a sovereign immunity argument as to Count Five (regarding the Title II claims). (ECF No. 36 at PageID.207.) Presumably, this approach is taken in light of the Supreme Court precedent determining that such claims are an exception to the rule. *United States v. Georgia*, 546 U.S. 151 (2006). As such, to the extent Moon disputes whether sovereign immunity extends to Count Five, the Court does not wade into that analysis here, as Defendants do not dispute that Count Five remains live.

individual defendants in their personal capacities. *See supra* note 1 (discussing why Count Five must be dismissed as to these Defendants in their individual capacities). It is denied insofar as Defendants seek dismissal of the remaining Counts on the basis of failure to exhaust. *See supra* Section III.

It is also denied insofar as Defendants seek summary judgment as to the injunctive relief Moon seeks as there remain genuine issues of material fact as to not only whether Moon exhausted her remedies, but more generally, what prison officials did (or did not) do to preclude Moon from receiving proper housing and medical attention. In other words, the Court cannot state unequivocally that Moon would not be entitled to injunctive relief and is, accordingly, constrained to deny Defendants' motion in that regard. *See Hubbard v. City of Middletown*, 782 F. Supp. 1573, 1581 (N.D. Ohio 1990) (denying defendant's motion for summary judgment as to injunctive relief where the Court could not unequivocally state that plaintiff would not be entitled to injunctive relief).

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for an extension to file her extension is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**; to the extent Defendants seek summary judgment on Counts One and Three as against MDOC

and the MDOC Bureau of Health Care Services, the motion is **GRANTED**; to the extent Defendants seek summary judgment as to Moon's Title II claims under the ADA against Freling, Barden, Turnwald, Saunders, Zamora (the former John Doe), Christiansen, Descoe, Wentzel, Hall, Sobeck, and Leos in their individual capacities, the motion is **GRANTED**; to the extent Defendants seek dismissal on the remaining Counts for failure to exhaust, the motion is **DENIED**; to the extent that Defendants seek summary judgment on the injunctive relief that Moon seeks, the motion is **DENIED**;

**IT IS FURTHER ORDERED** that Counts One and Three as alleged against the MDOC and the MDOC Bureau of Health Care Services are dismissed with prejudice; and

**IT IS FURTHER ORDERED** that Moon's Title II claims under the ADA against Freling, Barden, Turnwald, Saunders, Zamora (the former John Doe), Christiansen, Descoe, Wentzel, Hall, Sobeck, and Leos in their individual capacities are dismissed with prejudice.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: October 14, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, October 14, 2026, by electronic and/or U.S. First Class mail.

s/R. Thieme
Case Manager